David J. Harris, Jr.
HARRIS LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102
david@harrisllp.com
N.D.N.Y. Bar Roll No. 704884

*Counsel for Plaintiff and
the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK KURANT, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>Defendant. | Case No.: 1:25-cv-1549 (FJS/MJK)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to Fed. R. Civ. P. 23, Plaintiff Mark Kurant initiates this class action on behalf of himself, and all other persons in New York State who have purchased an LG refrigerator with the model number LRFS28XBS (the "Class"). Plaintiff makes the following factual allegations based upon the investigation of his counsel, and based upon personal knowledge as to himself and his own acts and experiences with Defendant LG Electronics, U.S.A., Inc. ("LG" or "Defendant"). Plaintiff and his counsel believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. For many years, Defendant LG has designed, manufactured, and sold numerous types of common refrigerators throughout New York State and the United States. LG sells its refrigerators to businesses and consumers nationwide through its website, and through popular home-goods retailers like Best Buy, Home Depot, Lowes, and Costco.

2. This case arises out of an inherent defect in certain LG refrigerators, which Defendant has manufactured, marketed, and sold to the public under model number LRFS28XBS (the "Refrigerators"). At all relevant times, these Refrigerators have been fatally defective because they contain "linear compressors" that fail early in the Refrigerators' operating life, rendering the Refrigerators suddenly and permanently unable to perform their basic cooling function.

3. Despite LG's knowledge that the Refrigerators have defective linear compressors, and are thus prone to sudden and complete failure, LG has continuously marketed and sold the defective Refrigerators to purchasers for thousands of dollars per unit, without disclosing that they are likely to become inoperable within a short time after purchase. LG has further failed to provide adequate repairs or remedies for many consumers like Plaintiff, whose Refrigerators have suddenly and prematurely failed without warning.

4.      Refrigerators that routinely fail to regulate internal temperatures have no economic value to purchasers, because they are unable to maintain safe temperatures for critical refrigerated items, like foods and medicines.  Refrigerated items become spoiled and unconsumable without warning, causing unreasonable losses of all refrigerated items and/or significant risks of food-borne illnesses.

5.      If Plaintiff and the Class had known about the linear compressor defect in LG's Refrigerators, then they would not have purchased these Refrigerators at all.  In additional to their original purchase prices, Plaintiff and other Class members have lost enormous amounts of food and other valuable items, upon their Refrigerators' sudden and unexpected failures after purchase. Plaintiff and the Class have suffered further losses by being forced to pay for expensive Refrigerator repairs and/or replacements after their defective Refrigerators fail.

6.      On behalf of himself and the putative Class, Plaintiff seeks judicial relief from Defendant's unlawful conduct in manufacturing, marketing, and selling its defective Refrigerators to purchasers within New York State.

## PARTIES

7.      Plaintiff Mark Kurant is a resident of New York State who purchased a defective Refrigerator at a Best Buy location near Albany, New York.

8.      Defendant LG Electronics U.S.A., Inc. is the North American subsidiary of LG Electronics Inc., and is incorporated under Delaware law, with its principal place of business located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), as Plaintiff and other Class members are citizens of New York, while

Defendant LG is a citizen of a New Jersey, and because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs

10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and LG has caused harm to Plaintiff and other Class members within this District.

## SUBSTANTIVE ALLEGATIONS

11.  Among the most important appliances in any home, office, or other dwelling place is a common refrigerator used for cooling foods, drinks, medicines, and other goods requiring regular maintenance below room temperatures.

12.  A core component of any refrigerator is called the "compressor," which is responsible for circulating refrigerant throughout a refrigerator's internal system.  Every refrigerator has a compressor of some type, and no refrigerator can perform its basic cooling function without a functioning compressor.

13.  The compressor is responsible for starting and stopping a refrigerator's cooling process, based on information received from the refrigerator's temperature sensors.  When a refrigerator's internal temperature rises to a certain level, the compressor draws cold "refrigerant" gas from the refrigerator's "evaporator."

14.  The cold refrigerant gas enters the compressor through an intake valve, and then the compressor pressurizes it (*i.e.,* compresses it).  This compression of refrigerant gas temporarily raises its temperature and pushes it out through a discharge valve, and then through coils on the outside of the refrigerator. When the hot refrigerant gas in the coils meets the cooler air temperatures in the room, the refrigerant gas condenses into liquid form.  The liquid refrigerant

then passes through an expansion valve, which decreases its pressure and temperature, and then continues to flow through coils inside the refrigerator.

15. As the cold, liquid refrigerant moves throughout all the refrigerator's interior coils, it cools the air inside the refrigerator, by absorbing heat from the air. The liquid refrigerant's absorption of heat causes it to evaporate back into gas. That refrigerant gas then flows back into the compressor via the evaporator, and the entire process repeats as triggered by the refrigerator's temperature sensors.

16. The defective Refrigerators at issue here contain a newer typer of compressor, called a "linear compressor." LG's linear compressor drives a piston motor with a magnet and springs. LG has designed its linear compressors as purportedly energy-efficient replacements for the more traditional, reciprocating compressors used in many refrigerators. LG views its proprietary linear compressors as important to its business, and has featured them prominently in its public representations, advertisements, and marketing materials for years.

17. For example, Defendant specifically singled out its linear compressor technology as part of a 2014 press release, announcing: "LG is so confident in its technology that the Inverter Linear Compressor has been covered under a 10-year warranty since 2009, a first in the industry." *See* https://www.lgnewsroom.com/2014/11/10-million-homes-benefiting-from-lg-refrigerators-with-inverter-linear-compressor-technology (last visited Nov. 2, 2025). "'LG has always strived to offer consumers advanced, performing appliances in the industry,' said Young-il Park, head of LG's refrigerator business unit. 'Our Inverter Linear Compressor is the result of our commitment to excellence and technological innovation and demonstrates LG's desire to lead the global premium refrigerator market.'" *Id.*

18. LG issued another press release on March 21, 2017, declaring the sale of its "15th million [sic] refrigerator worldwide powered by its proprietary Inverter Linear Compressor"—which LG characterized as its "appliance division's most successful core technology." In the same release, LG projected that it would sell another four million units in 2017, amounting to "an average of seven refrigerators sold every minute." https://www.lgnewsroom.com/2017/03/lg-marks-sale-of-15-million-refrigerators-powered-by-its-inverter-linear-compressor-technology (last visited Nov. 2, 2025).

19. Similar statements have long appeared on LG's website, product pages, YouTube channels, and social media pages. Just a few of many such statements by LG, concerning its linear compressors and related refrigerators, are as follows:

(a) "The cutting edge design and performance of LG Refrigerators is unmatched. Designed to last long, store more, and add style to your home, an LG Refrigerator keeps food cold and fresh in a space-saving and stylish unit."

(b) "LG provides reliable & state-of-the-art compressors and motors based on advanced technology that keep customers up to date with the latest parts."

(c) "LG's Inverter Linear Compressor is a critical component of every premium refrigerator and is considered a core technology behind the success of the company's appliances. Unlike conventional rotary compressors that utilize circular motion, LG's Linear Compressor converts linear motion into cooling power much more efficiently. This process reduces energy consumption and noise level compared to refrigerators with conventional motors."

(d) "Why LG Linear Compressors? LG Linear Compressor has higher efficiency and less efficiency variation. LG Linear Compressor runs stable without

causing noise. Fewer friction points reduce the noise level. LG linear compressor has better responsiveness of control."

(e) "LG's Inverter Linear technology is designed only with essential parts, improving performance and durability."

(f) "LG is the first to add Linear Technology to its refrigerators, ensuring food stays fresher for longer."

(g) "The Linear Compressor, a core technology of LG, is quiet and efficient. Its unique direct transmission mechanism minimizes mechanical loss, thus saving energy, increasing durability and making less noise."

(h) "The innovative Linear Compressor, featured on LG refrigerators, helps to ensure a more consistent temperature inside your fridge, to help all your favorites stay fresh longer."

(i) "The LG Inverter Linear Compressor has surpassed the 20-year lifespan test," which was purportedly "conducted according to LG's internal accelerated 20-year life-test protocol."

20.     Despite Defendant's positive touting of its Refrigerators and their "linear compressor" technology, the truth is that the linear compressors in Defendant's Refrigerators are fundamentally defective, rather than "reliable," "stable," or "durab[le]," and that the Refrigerators are prone to sudden, complete, and permanent failure relatively soon after purchase.

21.     At all times, Defendant had a duty to disclose to Plaintiff, the Class, and the public that its Refrigerators were made with defective linear compressors, yet Defendant has consistently declined to make any such disclosure. Rather than making any such disclosure, LG has knowingly and continuously sold the Refrigerators: (a) without warning Plaintiff and Class members of the

risk that these Refrigerators may cease to store food, medicine, and other important items at safe temperatures; (b) without recalling the defective Refrigerators; (c) without offering to repair or replace the Refrigerators free of charge; and (d) without refunding Plaintiff and the Class their expensive purchase prices and costs incurred due to their Refrigerators' failure.

22. The fatal, linear compressor defect in LG's Refrigerators was never disclosed to Plaintiff or other Class members at or before the time of sale, nor has LG disclosed this defect to Class members at any time after their Refrigerator purchases. Instead, LG has consistently concealed the defect from Plaintiff, the Class, and all other actual and potential purchasers.

23. LG has marketed and sold the Refrigerators to Plaintiff and the Class using misleading representations and warranties as detailed herein, and while *knowing* that its Refrigerators' compressors were and are defective. LG has long known that its Refrigerators' compressors are prone to premature and permanent failure, such that they would cause internal temperatures to rise and make the Refrigerators unfit for the storage of foods, medicines, and other perishables.

24. LG has long known about the widespread problems and failures of its Refrigerators' linear compressors from its direct communications with complaining customers, including but not limited to Class members, as well as from LG's communications with retailers and repair personnel who have themselves been inundated with consumer complaints and repair requests for many years.

25. On or about November 7, 2023, Plaintiff Mark Kurant purchased an LG Refrigerator with model number LRFS28XBS/01, for approximately two thousand dollars. Plaintiff purchased his Refrigerator for normal use in the kitchen of his primary home.

26. At some time between July 30, 2025 and August 1, 2025, without warning, his Refrigerator stopped working. The Refrigerator's internal temperature ceased to be regulated and warmed to approximately room temperature. When Plaintiff discovered this, he discarded all spoiled foods. He also purchased several bags of ice and moved all unspoiled into several coolers at his residence.

27. Having purchased his refrigerator at a local Best Buy store, Plaintiff called Best Buy to request repair service. An authorized repair technician arrived approximately one week later, on August 8, 2025. Upon his arrival, and after checking Plaintiff's Refrigerator, the repair technician informed Plaintiff that he had just left another person's home, which had the same Refrigerator, with the same problem. The technician said he would order the necessary replacement part for subsequent installation.

28. On or about August 27, 2025, a repair technician came to Plaintiff's home and installed the newly ordered Refrigerator part. In response, Plaintiff immediately went to the grocery store to replace all previously lost food, and to generally restock his Refrigerator after living out of coolers for several weeks. Upon his return from the grocery store, however, Plaintiff discovered that his Refrigerator was—once again—not working. Plaintiff quickly purchased a new, larger cooler and more ice, for temporarily storing his latest food purchases.

29. Plaintiff then called the repair technician again, who informed Plaintiff that *additional* Refrigerator parts would have to be ordered and installed, to reattempt repair. Delivery of such additional parts, however, was delayed by several weeks with no end in sight, as Plaintiff continued to live out of coolers and ice bags.

30. Consequently, on September 19, 2025, Plaintiff gave up on waiting to (maybe) repair his broken Refrigerator and instead purchased a brand new refrigerator from a different

manufacturer. Plaintiff paid approximately two thousand dollars for his new refrigerator. All in, Plaintiff lost several thousand dollars in outsized purchase prices, food losses, repair costs and related expenses, as a result of Defendant's conduct in misrepresenting and failing to disclose the defective nature of its Refrigerators prior to his purchase. Like Plaintiff, many other Class members have suffered and will continue to suffer thousands of dollars in individual losses, as a direct result of Defendant's conduct in manufacturing, advertising, and selling these defective LG Refrigerators.

31. Had LG disclosed to Plaintiff and other Class members the risks and deficiencies inherent in all its Refrigerators, specifically in their "linear compressors," then Plaintiff and the Class would not have paid thousands of dollars per unit for such worthless appliances, and would not have suffered the significant food and other product losses or other costs that have resulted, and will continue to result, from LG's undisclosed Refrigerator defect. Plaintiff and the Class hereby seek judicial redress for their injuries caused by Defendant's unfair and unlawful conduct.

## CLASS ALLEGATIONS

32. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff brings this action on behalf of himself and all other persons in New York State who have purchased an LG refrigerator with the model number LRFS28XBS (the "Class").

33. Members of the proposed Class are so numerous that the joinder of all of them is impracticable. Though the exact number of Class members is unknown to Plaintiff at this time prior to discovery, current information suggests that there are at least hundreds of Class members.

34. This case involves common questions of both law and fact, which predominate over questions affecting only individual Class members, and which include (but are not limited to) the following:

(a) whether LG's Refrigerators contain the linear compressor defect alleged herein;

(b) whether and when LG became aware that its Refrigerators contained defective compressors;

(c) whether LG falsely and misleadingly advertised and/or omitted to disclose the Refrigerator defect to Class members and the consuming public;

(d) whether the compressor defect alleged herein would be material to the reasonable consumer in considering whether to purchase a Refrigerator;

(e) whether Plaintiff and the Class have suffered cognizable harms by purchasing defective Refrigerators, without notice or warning; and

(f) the proper method for measuring the damages suffered by Plaintiff and the Class.

35. Plaintiff's claims are typical of the Class's claims because Plaintiff and each Class member purchased a similar Refrigerator having the same type of defective, linear compressor, and were similarly injured by Defendant's conduct as alleged herein. Plaintiff's and the Class's claims all arise from the same business practices and course of conduct by LG, and rely upon the same legal theories to seek relief from similar injuries.

36. Plaintiff and his counsel are adequate to represent the Class, as their interests do not conflict with the Class's interests. Plaintiff is an individual member of the Class he seeks to represent, and has retained counsel competent and experienced in litigating complex class actions such as this.

37. Lastly, a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. No unusual difficulties exist or are likely to arise in the management of this case as a Class action. The damages suffered by individual Class members

are relatively small compared to the burdens and expenses that would be incurred by individually litigating each Class Member's claims against LG; this makes it unlikely if not impracticable for Class members to seek individual redress for their injuries. Even if Class members could afford widespread individual lawsuits, such lawsuits would create risks of irreconcilable decisions and judgments, while increasing the aggregate litigation costs to all parties and the court system. The Class procedure here will promote judicial efficiency and ensure the consistent adjudication of similar rights asserted against LG by many similarly situated persons. Additionally, Class members can be readily identified and notified of this action based upon information from LG's business records and other centralized data sources.

## FIRST CAUSE OF ACTION
**Violation of New York General Business Law - N.Y. Gen. Bus. Law § 349, *et seq.***
**(On Behalf of Plaintiff and the Class)**

38.     Plaintiff hereby repeats and realleges all allegations contained in this complaint as if fully set forth in this paragraph.

39.     Plaintiff and all other Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

40.     Defendant LG is a "person" and "corporation" under N.Y. Gen. Bus. Law § 349.

41.     The New York Deceptive Acts and Practices Act ("DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

42.     In the regular conduct of its business, LG and its agents, employees, and affiliates have violated DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts concerning the reliability and performance of LG Refrigerators and their defective, linear compressors as detailed herein.

43. Due to LG's unique role in the design, manufacture, testing, and sale of all Refrigerators and their internal components, including but not limited to the Refrigerators' linear compressors, LG had exclusive access to, and was in a superior position to know of, the true facts about the defective linear compressors built into its Refrigerators.

44. In light of the linear compressors' hidden and technical nature, Plaintiff, the Class, and the public generally lack the expertise in refrigeration technology necessary to discover the Refrigerators' defect independently.

45. LG made, helped to make, and/or conspired to make incomplete representations about the performance and reliability of its Refrigerators, while purposefully withholding material facts about a significant, known defect.  Because LG volunteered to provide information about its Refrigerators—and specifically, about its linear compressors—which they marketed and offered for sale to the public, LG had the duty to disclose the whole truth about such products.  LG knew that the defect alleged herein would give rise to serious concerns among consumers who purchased these Refrigerators, yet LG wrongfully concealed the defect from them.

46. For the above reasons, LG had an ongoing duty to disclose all material facts regarding its defective compressors and Refrigerators to Plaintiff and the Class, and to refrain from any unfair or deceptive practices in the course of conducting its business.  LG has consistently failed to fulfill such duties.

47. LG's unfair and deceptive acts and practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead, and had a tendency or capacity to mislead, and to create a false impression in consumers that the Refrigerators had a properly functioning and reliable cooling system.  Indeed, LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the

Refrigerators and their linear compressors *did* deceive reasonable consumers, including but not limited to Plaintiff and the Class, regarding the value, quality, functionality, and reliability of these Refrigerators and/or their defective compressors.

48. LG specifically intended for Plaintiff and the Class to rely upon its misrepresentations, omissions, and concealments: which they did while buying the Refrigerators for thousands of dollars each, believing that their purchases would not have defective components rendering their expensive Refrigerators inoperable.

49. Plaintiff's and Class members' reliance was reasonable, as they had no way of discerning that LG's representations were false or misleading, and had no way of otherwise learning the facts that LG concealed and failed to disclose.

50. LG's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Refrigerators' defect and true characteristics were material to the decisions of Plaintiff and other Class members to purchase the Refrigerators, just as LG intended. Plaintiff and the Class were exposed to Defendant's misrepresentations, concealments, omissions, and suppressions of material facts, and relied upon LG's misrepresentations that the Refrigerators were properly functioning and reliable in deciding to purchase the Refrigerators.

51. Had Plaintiff and the Class known the truth about the Refrigerators' defective compressors, they would never have purchased the Refrigerators, and would never have suffered the significant economic losses that they now have suffered.

52. As a direct and proximate result of LG's deceptive practices, Plaintiff and other Class members have sustained substantial economic injuries and losses—including by purchasing Refrigerators they otherwise would not have purchased—and such injuries and losses first occurred at the time when each Refrigerator was purchased. Plaintiff and other Class members

have also suffered significant losses in attempting to repair and replace their broken Refrigerators, as well as the further losses of expensive, refrigerated items that became spoiled due to Defendant's undisclosed Refrigerator defect.

53. Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiff and the Class request an order enjoining LG's unfair and deceptive acts and practices, and awarding them actual damages, punitive damages, and any other just and proper relief available under DAPA.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty - N.Y. U.C.C. §§ 2-313 and 2A-210
### (On Behalf of Plaintiff and the Class)

54. Plaintiff hereby repeats and realleges all allegations contained in this complaint as if fully set forth in this paragraph.

55. LG's Refrigerators are "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

56. LG is a "merchant" of the Refrigerators under N.Y. U.C.C. § 2-104(1), and a "seller" under § 2-103(1)(d).

57. Plaintiff and all Class members are "buyers" under N.Y. U.C.C. § 2-103(1)(a).

58. LG has issued express written warranties for all the defective Refrigerators it sold, including warranties that the Refrigerators would be free from defects in materials and workmanship at the time of sale, and that the Refrigerators would be reliable and, at minimum, function properly during the course of their warranty period. Such warranties formed the basis of the bargain with respect to Plaintiff's and the Class's purchases of the Refrigerators.

59. LG has knowingly breached its warranties for the Refrigerators because all Refrigerators have fundamentally defective linear compressors, which render the Refrigerators unable to perform their basic cooling function, and because LG has denied, concealed and

misrepresented the existence of such defect while refusing to provide Plaintiff and the Class with necessary Refrigerator repairs or replacements in a timely manner.

60.     LG knew or should have known that its warranties were false and/or misleading at all relevant times.  Specifically, LG was aware of the linear compressor defect in its Refrigerators, which made the Refrigerators inherently defective when sold to Plaintiff and the Class.

61.     Plaintiff and other Class members were exposed to LG's misrepresentations and had no way of discerning that LG's representations were false or misleading, nor of otherwise learning the material facts that LG concealed and failed to disclose regarding its Refrigerators' compressors. Accordingly, Plaintiff and the Class reasonably relied on LG's express warranties when purchasing their defective Refrigerators.

62.     Despite LG's express warranties, LG has refused to provide adequate Refrigerator repairs or replacements to Plaintiff and other Class members, after their defective Refrigerators catastrophically failed.  Plaintiff and other Class members here gave LG notice of the Refrigerator problems identified herein and an opportunity to cure the same, or alternatively, were and are excused from giving LG such notice and opportunity because doing so would have been futile; indeed, many other consumers have given LG such prior notice and opportunity regarding their own defective Refrigerators, yet LG has consistently refused to remedy consumers' broken Refrigerators as well as its own express warranty breaches.

63.     As a direct and proximate result of LG's breach of express warranties, the compressor defect and its harmful consequences have not been remedied, and LG's Refrigerators have remained unfit and/or unable to perform their basic function.  Therefore, Plaintiff and the Class have been damaged in an aggregate amount to be proven at trial, through their overpayments at the time of purchase for their Refrigerators, which had hidden defects that have never since been remedied.

## THIRD CAUSE OF ACTION
### Breach of Implied Warranties - N.Y. U.C.C. §§ 2-314 and 2A-212
### (On Behalf of Plaintiff and the Class)

64. Plaintiff hereby repeats and realleges all allegations contained in this complaint as if fully set forth in this paragraph.

65. LG's Refrigerators are "goods" within the meaning of N.Y. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

66. LG is a "merchant" of the Refrigerators under N.Y. U.C.C. § 2-104(1), and a "seller" under § 2-103(1)(d).

67. Plaintiff and all Class members are "buyers" under N.Y. U.C.C. § 2-103(1)(a).

68. At all relevant times, by operation of New York law, LG conferred upon Plaintiff and the Class an implied warranty that its Refrigerators were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.Y. U.C.C. §§ 2-314 and 2A-212. The Refrigerators, however, were not and are not merchantable or fit for ordinary use, and as such, LG breached its implied warranties.

69. Indeed, LG's Refrigerators were never merchantable because, at the time of sale and at all times thereafter: (a) the Refrigerators would not pass without objection in the home appliance trade, given the linear compressor defect; (b) the compressor defect and its consequences render all Refrigerators unfit for their ordinary purpose; (c) the Refrigerators' packaging and user manuals failed to disclose the fatal compressor defect; and (d) the Refrigerators did not conform to their labeling, which represented that the Refrigerators were suitable for their intended use.

70. Plaintiff and other Class members gave LG notice of the Refrigerator problems identified herein and an opportunity to cure the same, or alternatively, were and are excused from giving LG such notice and opportunity because doing so would have been futile; indeed, many other consumers have given LG prior notice and an opportunity to cure regarding their own

defective Refrigerators, yet LG has consistently refused to remedy consumers' broken Refrigerators and refused to remedy its own warranty breaches.

71. Plaintiff, individually and on behalf of the Class, thus requests all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members, respectfully requests that the Court enter judgment in Plaintiff's and the Class's favor, and against the Defendant, as follows:

A. Determining that the instant action may be maintained as a Class action under Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as a Class Representative and the law firm of Harris LLP as Class Counsel;

B. Awarding Plaintiff and the Class damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages in amounts to be determined at trial;

C. An order requiring Defendant to disclose to all actual and potential purchasers of the Refrigerators, at the point of sale, all material information regarding the defective nature of the Refrigerators and their linear compressors;

D. Awarding Plaintiff and the Class all reasonable costs, attorneys' fees and expenses permitted by applicable law; and

E. Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 3, 2025                                   Respectfully submitted,

                                                                HARRIS LLP

                                                                By:   s/ *David J. Harris, Jr.*

                                                                David J. Harris, Jr.
                                                                501 West Broadway, Suite 800
                                                                San Diego, California 92101
                                                                Telephone: (619) 213-1102
                                                                E-mail: david@harrisllp.com
                                                                N.D.N.Y. Bar Roll No. 704884

                                                               *Counsel for Plaintiff and the Putative Class*